UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| AMB MEDIA, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | 1:22-CV-00210-DCLC-SKL |
| v. | ) ) | |
| ONEMB, LLC, *et al.*, | ) ) ) | |
| Defendants | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' OneMB, LLC, and Red Mountain Media Group, LLC, Motion to Dismiss [Doc. 46]. Plaintiff AMB Media, LLC responded [Doc. 52], and Defendants replied [Doc. 54]. This matter is now ripe for resolution. For the reasons that follow, Defendants' Motion to Dismiss [Doc. 46] is **GRANTED**.

**I.     BACKGROUND**

Plaintiff is a Tennessee limited liability company that provides "a safe and easy way for people to digitally preserve home movies, photos, and other physical media." [Doc. 37, ¶¶ 23, 29]. Specifically, Plaintiff sells a kit that provides consumers with the tools necessary to send Plaintiff their physical media, which Plaintiff then converts into a digital format [*Id.*, ¶ 2]. Defendants are Arizona limited liability companies which compete with Plaintiff in digitizing physical media [Docs. 37, ¶¶ 24, 26-27, 42; 48, pgs. 2-3, ¶¶ 3-4].

Since April 2014, Plaintiff has marketed its service with the trademark "LEGACYBOX." [Doc. 37, ¶ 29]. Defendants market their similar service using the name "MEMORYBOX." [Docs. 37, ¶¶ 42; 48, pg. 3, ¶ 5]. According to Plaintiff, Defendants use the term "LEGACYBOX"

and other terms similar to it in their online advertising for their products [Doc. 37, ¶ 47]. Defendants offer a similar service to Plaintiffs using a similar brand name at a similar price [*Id.*, ¶¶ 49-54].

Defendants sold their kits to 59 customers in Tennessee between January 1, 2020, and October 28, 2022, totaling $16,862 in revenue from those Tennessee customers [*Id.*, ¶ 8]. Defendants offer their services through their website, www.memorybox.digmypics.com [*Id.*, ¶ 9]. Customers can purchase different types of products from Defendants through the website, and Defendants' website allegedly features reviews from some of the Tennessee customers who purchased Defendants' kits [*Id.*, ¶¶ 10-11]. Customers also can track their orders on Defendants' website by providing their order number and zip code [*Id.*, ¶ 17]. Additionally, customers must accept Defendants' Terms and Conditions, including an indemnity clause, when using their website [*Id.*, ¶ 19]. In support of its First Amended Complaint, Plaintiff includes screenshots of Defendants' website [Docs. 37, ¶¶ 14, 18, 20, 45, 53; 37-5, pg. 1; 37-6, pgs. 1-17]. Those screenshots show Defendants' website and the services they offer through their website, but the website does not contain any indication that it markets products specifically to Tennessee or Tennessee consumers. Further, Plaintiff does not show any of the Tennessee reviews purportedly featured on Defendants' website.

Plaintiff states that the nature of Defendants' services "involve multiple interactions between customers in Tennessee and Defendants[.]" [Doc. 37, ¶ 12]. Plaintiff explains that customers in Tennessee will send physical media to Defendants and that Defendants will return that media and digital files to the customer in Tennessee [*Id.*]. Plaintiff further asserts that Defendants primarily rely on email to communicate with customers about their orders [*Id.*, ¶ 15].

Plaintiff contends that Defendants' actions in Tennessee were purposeful because: (1) Defendants sold their services to customers in Tennessee; (2) Defendants communicated with

those customers; (3) Defendants solicited and facilitated shipment of Tennessee customers' physical media; (4) Defendants made numerous shipments to Tennessee customers to fulfill their orders; and (5) Defendants require Tennessee customers to accept their Terms and Conditions by using their website [*Id.*, ¶ 22].

In November 2020, Defendant OneMB applied for a trademark for "DIGMYPICS MEMORYBOX." [*Id.*, ¶ 43]. Plaintiff opposed Defendant OneMB's trademark application before the United States Patent and Trademark Office Trial and Appeal Board ("the Board") [*Id.*, ¶ 56]. Plaintiff subsequently filed the instant lawsuit in August 2022, and the Board suspended the administrative proceedings surrounding Defendant OneMB's trademark application because Plaintiff filed suit [Docs. 1, pgs. 1-18; 37, ¶ 56].

In its First Amended Complaint, Plaintiff contends that Defendants use of "MEMORYBOX" will cause consumer confusion and infringe on its trademark for "LEGACYBOX." [Doc. 37, ¶ 48]. Plaintiff alleges claims for trademark infringement in violation of federal law, unfair competition and false designation of origin under federal law, common law trademark infringement and unfair competition, and violation of Tennessee's Consumer Protection Act ("TCPA") [*Id.*, ¶¶ 61-83]. Plaintiff seeks declaratory, injunctive, and monetary relief [*Id.*, pgs. 21-25]. Defendants now move to dismiss Plaintiff's First Amended Complaint for lack of personal jurisdiction, among other reasons [Doc. 46].

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(2) allows a defendant to move for dismissal based on a lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When a defendant files such a motion, the plaintiff must show that the Court

can exercise personal jurisdiction.  *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008).

When deciding a motion to dismiss for lack of personal jurisdiction, the Court may: (1) rule on the motion on the basis of the affidavits submitted by the parties; (2) permit discovery in aid of the motion; or (3) conduct an evidentiary hearing on the merits of the motion.  *See Dean v. Motel 6 Operating LP*, 134 F.3d 1269, 1272 (6th Cir. 1998).  Regardless of which path the Court chooses, plaintiff has the burden of proof to show jurisdiction is proper.  *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002).  Additionally, when both sides submit competing affidavits but no party requests an opportunity for discovery on the jurisdictional issue or an evidentiary hearing, the Court may decide the jurisdictional issue based on the affidavits presented.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

A plaintiff's burden is "relatively slight" when establishing personal jurisdiction based on written submissions and affidavits.  *Estate of Thomson*, 545 F.3d at 360 (internal quotation marks omitted).  Viewing the facts in favor of the plaintiff, "the plaintiff must make only a prima facie showing that personal jurisdiction exists."  *Id.* at 360–61.  To determine whether the plaintiff has made such a showing, the Court considers the pleadings and any affidavits submitted by the parties in the light most favorable to the plaintiff.  Any conflicts between facts contained in the parties' affidavits must be resolved in the plaintiff's favor.  *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Dismissal under Rule 12(b)(2) is appropriate only if the specific facts alleged by the plaintiff, taken as a whole, fail to state a *prima facie* case for personal jurisdiction.  *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478 (6th Cir. 2003).

### III.   ANALYSIS

Defendants assert that Plaintiff's First Amended Complaint should be dismissed because the Court lacks personal jurisdiction over them, and an exercise of personal jurisdiction would

4

violate their federal due process rights [Doc. 47, pg. 14]. The long-arm statute of the state in which a federal court sits determines a federal court's personal jurisdiction. Fed. R. Civ. P. 4(k)(1)(A); *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Tennessee's long-arm statute gives jurisdiction "[o]n any basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. § 20–2–225. The Tennessee Supreme Court has ruled that this statute permits the exercise of jurisdiction to the full extent permissible under the United States Constitution. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 646 (Tenn. 2009). Therefore, the Court need only determine if exercising jurisdiction over Defendants would violate federal due process under the United States Constitution. *See Bridgeport Music Inc.*, 327 F.3d at 477; *see also Daimler AG*, 571 U.S. at 125.

A court's exercise of jurisdiction does not violate federal due process when a defendant has "certain minimum contacts with the [forum] State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 126 (internal quotations omitted). The tenet of "fair play and substantial justice" has led to two types of personal jurisdiction: general and specific. *Id.* at 127. A court can exercise general personal jurisdiction over a defendant "when a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (internal quotation marks omitted).

Here, Defendants do not have "continuous and systematic" contacts with Tennessee that would render them subject to an exercise of general personal jurisdiction, and Plaintiff does not dispute Defendants' motion as to that issue. Moreover, Defendants are formed under the laws of Arizona, have their principal places of business in Arizona, and do not conduct any substantial

5

amount of activity in Tennessee to fall under the general jurisdiction of Tennessee courts. Thus, the Court will turn to whether Defendants are subject to specific personal jurisdiction in Tennessee.

Defendants argue that Plaintiff failed to make a *prima facie* showing of specific personal jurisdiction as to them [Doc. 47, pg. 16], and Plaintiff responds that the First Amended Complaint contains sufficient factual allegations to establish specific jurisdiction [Doc. 52, pg. 6].[1] Unlike general jurisdiction, specific jurisdiction focuses on the connection "between the forum and the underlying controversy." *Power Investments, LLC v. SL EC, LLC*, 927 F.3d 914, 917–18 (6th Cir. 2019) (quoting *Goodyear*, 564 U.S. at 919). A defendant's contacts with the forum state, not the plaintiff's contacts, build that connection. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). A defendant must have directed some action to the forum state, "[b]ut a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286.

Specific personal jurisdiction applies to defendants "less intimately connected" with a state. *Ford Motor Co. v. Mont. Eighth Judicial District Court*, 141 S. Ct. 1017, 1024–25 (2021) (internal citations and quotation marks omitted). The contacts needed for specific jurisdiction go by the name "purposeful availment" because the defendant is not "at home," and the forum state may exercise jurisdiction in certain cases only. *Id.* The plaintiff's claims must arise out of—or relate to—the defendant's contacts with the forum. *Id.* The Sixth Circuit uses three criteria for analyzing whether a Defendant is subject to a forum's exercise of specific jurisdiction: (1) the defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities in the forum state; and (3) the acts of the defendant, or consequences caused by the defendant,

---

[1] Plaintiff also propounds an "alter-ego theory" of personal jurisdiction [Doc. 52, pg. 7]. But that theory is not applicable in this matter because Plaintiff treats Defendants identically in its jurisdictional allegations, and Defendants admit that they can be treated the same for purposes of the Court's jurisdictional analysis [Docs. 37, ¶¶ 5-22; 48, pg. 2, ¶ 2; 54, pg. 5].

6

must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Intera Corp.*, 428 F.3d at 615 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). The Court lacks specific personal jurisdiction over the defendant if any one of the three criteria are not met. *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1303 (6th Cir. 1989).

Defendants argue that they have not purposefully availed themselves of the privileges of acting in Tennessee [Doc. 47, pg. 16], and Plaintiff contends it has alleged facts sufficient to show otherwise [Doc. 52, pg. 8]. Purposeful availment "is present where the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum[.]" *Beydoun v. Wataniya Restaurants Holdings, Q.S.C.*, 768 F.3d 499, 505–06 (6th Cir. 2014) (quoting *Neogen Corp.*, 282 F.3d at 889) (emphasis in original)). The Court must focus on whether "the defendant has engaged in some overt actions connecting the defendant with the forum state." *Id.* (citing *Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2008)). In other words, purposeful availment can be understood as a "deliberate effort by the defendant to direct its activities toward, and to make contact with, the forum." *Capital Confirmation, Inc. v. Auditconfirmations, LLC*, No. 3:09-0412, 2009 WL 2823613, at *5 (M.D. Tenn. Aug. 28, 2009) (citing *Bridgeport Music*, 327 F.3d at 478).

According to Defendants, Plaintiff relies solely on Defendants' maintenance of a website to support exercise of specific jurisdiction over them [Doc. 47, pg. 16]. Defendants note that they do not provide customers with personalized credentials, such as a password or login information, for using their website or for downloading the digitized media they create for their customers [*Id.*, pg. 17]. Plaintiff responds that Defendants operate an interactive website that provides customers the ability to download their digitized media from that website [Doc. 52, pg. 10]. Additionally, Plaintiff notes Defendants' website includes an online shopping cart to allow customers to

7

purchase products and provide mailing and payment information [*Id.*]. Plaintiff contends that Defendants directly market to Tennessee customers by including reviews from Tennessee customers on their website [*Id.*]. Defendants reply that their operation of a generally accessible commercial website is insufficient to meet the purposeful-availment requirement [Doc. 54, pg. 8].

The operation of a website constitutes the purposeful availment of the privilege of acting in a forum state "if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp.*, 282 F.3d at 890. "There are generally three levels of interactivity of websites, including: (1) passive sites that only offer information for the user to access; (2) active sites that clearly transact business and/or form contracts; and (3) hybrid or interactive sites that allow users to 'exchange information with the host computer.'" *See, Inc. v. Imago Eyewear Pty., Ltd.*, 167 F. App'x 518, 522 (6th Cir. 2006) (quoting *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997)).

But simply maintaining a website available to residents in the forum state is not purposeful availment. *Neogen Corp.*, 282 F.3d at 890. Similarly, a defendant's operation of a website with a commercial function does not, without more, constitute purposeful availment. *Bird*, 289 F.3d at 874–75. A plaintiff must show that a defendant "directly target[ed] its web site to the state, knowingly interact[ed] with residents of the forum state via its web site, or through sufficient other related contacts." *Roberts v. Paulin*, No. 07-CV-13207, 2007 WL 3203969, at *6 (E.D. Mich. Oct. 31, 2007) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003)).

Here, Plaintiff emphasizes several aspects of Defendants website, such as allowing customers to purchase kits from Defendants, displaying reviews from Tennessee customers, and tracking customer orders by order number and customer zip code [Doc. 37, ¶¶ 10-11, 17-18]. Those features undoubtedly qualify Defendants' website as a commercial and interactive website. *See, Inc.*, 167 F. App'x at 522. But—in 2023—those features are also commonplace among the

vast majority of websites for businesses of all sorts. Thus, the maintenance of Defendants' website alone does not show that Defendants directed their activity toward Tennessee, even though Defendants' website qualifies as a commercial and interactive website. Consumers from across the country can access Defendants' website and place orders for their digitizing kits. Indeed, the national reach of Defendants' website and its alleged use of an infringing mark is what Plaintiffs wish to stop by filing this suit.

Plaintiff also argues that Defendants require Tennessee customers to accept their Terms and Conditions when using their website, which shows Defendants directed their actions to Tennessee [Doc. 52, pg. 12]. Defendants contend that they do not enter into a contract with Tennessee customers who accept their Terms and Conditions because there was no consideration between the customers and Defendants [Doc. 47, pg. 21]. Tennessee customers merely agreeing to abide by Defendants' Terms and Conditions for access to their website does not establish purposeful availment. The Sixth Circuit has held that "the mere existence" of a contract between a defendant and a resident of a forum state is insufficient to show purposeful availment by a defendant. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000). The Court must look to "prior negotiations and contemplated future consequences, along with the terms of the contract and parties' actual course of dealing" before finding the presence of a contract as evidence of purposeful availment. *Id.* (quoting *Burger King*, 471 U.S. at 479). Here, Plaintiff's bare allegation that Tennessee customers accepted Defendants' Terms and Conditions for access to their website is not sufficient to find Defendants purposefully availed themselves of the privilege of transacting business in Tennessee [Doc. 37, ¶ 19].

Plaintiff also asserts that between January 1, 2020, and October 28, 2022, 59 customers in Tennessee purchased digitizing kits from Defendants, which totaled $16,862 in revenue [Doc. 52, pg. 9]. Plaintiff notes that Defendants' business requires it to send customers a kit that includes

9

instructions for how to ship physical media, have repeated contact with customers to facilitate transfer of physical media, communicate regarding the digitizing process, potentially host digitized media online, and send customer's physical media back to them after digitization is complete [*Id.*]. Defendants argue that they have not entered into any third-party contracts to make their services more accessible to Tennessee consumers or to target Tennessee consumers specifically [Doc. 47, pg. 17]. Defendants also contend they have not taken any deliberate steps to establish a substantial connection with Tennessee [*Id.*, pg. 20].

Purposeful availment does not rely on a "percentage of business" analysis "but rather on whether the absolute amount of business conducted by [Defendants] . . . represents something more than 'random, fortuitous, or attenuated contacts' with the state." *Neogen Corp.*, 282 F.3d at 891–92 (quoting *Burger King*, 471 U.S. at 475)). Plaintiff does not allege that Defendants actively solicited business from those 59 Tennessee customers over the two-and-a-half year period Plaintiff notes or that Defendants attempted to engage in further business with those customers. Plaintiff only cites Defendants' Tennessee customer statistics as evidence that it directed its activities toward those Tennessee customers [Doc. 37, ¶ 8]. Without further allegations about the role Defendants played in pursuing those customers, the Court cannot find that those transactions represent more than "random, fortuitous, or attenuated contacts" with Tennessee.[2]

Additionally, Plaintiff's assertion that Defendants' services "involve multiple interactions between customers in Tennessee and Defendants" could describe any other retailer selling goods through a generally accessible, commercial website [Doc. 37, ¶ 12]. To be sure, Defendants

---

[2] Although the Court does not focus on the percentage of business that the Tennessee customers represent for Defendants, Defendants' assertion that those 59 customers represent less than one percent of their total revenue is telling [Doc. 47, pg. 9; 48, pgs. 2-3, ¶¶ 11-14]. That figure highlights that Defendants' Tennessee contacts are better categorized as "random, fortuitous, or attenuated[.]" *Neogen Corp.*, 282 F.3d at 891–92 (quoting *Burger King*, 471 U.S. at 475)).

10

directed activity toward the Tennessee customers, once those Tennessee customers placed orders for digitizing kits on Defendants' website. But purposeful availment requires that "defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum[.]" *Beydoun*, 768 F.3d at 505–06. Defendants only interacted with those Tennessee customers because those customers ordered digitizing kits from Defendants in the first instance. Plaintiff does not allege that the Tennessee customers visited Defendants' website because Defendants solicited their business through advertisement or direct targeting from their website. And the screenshots of Defendants' website that Plaintiff includes in its First Amended Complaint and Response do not show that Defendants' website was directed at Tennessee consumers in any way. Those screenshots show a website that appears to be accessible to anyone in any forum [Doc. 37, ¶¶ 14, 18, 20, 45, 53; 37-5, pg. 1; 37-6, pgs. 1-17].

Indeed, a number of courts in this Circuit have found that "isolated sales to a forum, through an interactive website or otherwise, will not satisfy the purposeful availment requirement." *Oaks v. Largo Bioscience, Inc.*, No. 3:21-CV-00541, 2022 WL 765506, at *7 (M.D. Tenn. Mar. 11, 2022) (collecting cases). As one court aptly stated, "the crucial distinction appears to be who reached out to whom." *Advanced Solutions Life Sciences, LLC v. BioBots, Inc.*, No. 3:16-CV-00709, 2017 WL 2114969, at *6 (W.D. Ky. May 15, 2017). Plaintiff here describes a routine commercial interaction that could apply to many different websites on a daily basis, and Plaintiff fails to allege that Defendants initiated the interactions they had with Tennessee consumers. Without more, Plaintiff cannot show that Defendants directed their activities to Tennessee based on their sporadic sales to Tennessee customers alone.

Even taking Plaintiff's allegations together, they still do not show purposeful availment by Defendants. Defendants' website coupled with their sporadic sales to Tennessee customers over the past two-and-a-half years do not show that they directed their activities toward Tennessee.

11

Instead, Plaintiff's allegations show that Tennessee consumers came upon Defendants' website, bought their product, and Defendants fulfilled those consumers' purchases.

Accordingly, Plaintiff fails to allege facts necessary to show that Defendants purposefully availed themselves of the privilege of acting in Tennessee. Because Plaintiff cannot show that Defendants' purposefully availed themselves of acting in Tennessee, the Court need not address the remaining criteria for whether Defendants are subject to specific personal jurisdiction in Tennessee. *LAK, Inc.*, 885 F.2d at 1303. Moreover, the Court does not address Defendants' remaining arguments in their motion to dismiss.

## IV. CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss [Doc. 46] is **GRANTED**. Defendants' Motion to Strike [Doc. 49] is **DENIED AS MOOT**.

**SO ORDERED**:

s/ Clifton L. Corker
United States District Judge